Lead case number 19-3494, Linda Boal et al. v. DePuy Orthopedics Inc. et al. with 11 consolidated cases. Oral argument not to exceed 15 minutes per side. Mr. Sprague for the appellate. Mr. Sprague for the appellate. May it please the court, Aaron Sprague for the appellants. I'm going to reserve 5 minutes for rebuttal. I think it's appropriate to start with what is now the elephant in the room, which is subject matter jurisdiction. I thought it was kind of fun in your pleadings that you filed yesterday that you kept telling us that nobody had ever mentioned this before until right now. And I would have kind of thought that maybe it was something you would have mentioned. Your Honor, that is certainly a reasonable point of view. And I think that in not mentioning it, we're in good company. Because the defense didn't mention it, neither did the district court in this case or in another case involving foreign plaintiffs, the Block case. All of those went through the form nonconvenience analysis on a motion to dismiss and was dismissed on that grounds without subject matter jurisdiction ever arising. And in this respect, this case is not unique. This happens not infrequently that cases will come to the appellate level without subject matter jurisdiction ever being raised below. And then the appellate courts see fit to pump the brakes and say let's – What is our obligation? Absolutely, Your Honor, and I wouldn't – Subject matter jurisdiction at every step. Absolutely, and I wouldn't argue otherwise. And I think that the case law in this circuit is clear that that is completely appropriate. But you have conceded, as I read your filings of yesterday or the day before, time flies when you're having fun. It looks to me like you've conceded that there isn't jurisdiction. Your Honor, there is not diversity jurisdiction under 1331. That is clear under this court's – Why wouldn't we just dismiss this appeal and let you then go back to the district court and do whatever it is you think you need to do in order to plead something that would provide a jurisdictional base? Your Honor, because I think that the more efficient way to handle that is through the avenue that we've raised, which is 28 U.S.C. 1653, which allows amendment at any time both in the district and appellate courts to address jurisdictional defects, which is what we have done here. Do you have a case that suggests that you can use that statute in order to add a federal claim that wasn't presented previously? I've never – I've seen that statute generally speaking in, for instance, diversity cases where they fail to allege the members of all LLCs or something to that effect, but it's clear diversity exists because all LLCs are from different states. I've never seen the statute used to add a federal claim and to change the nature of the jurisdictional hook from 1332 to 1331. Did you – I didn't see any cases cited in your supplemental that would suggest that that would be appropriate or at least that arose in that same type of factual context. Your Honor, let me first directly address your question and then provide some additional explanation. The direct answer to your question is you're correct, and I think I need to frankly acknowledge that, that usually when 1653 is used, it's used to correct a deficiency in the pleadings when, say, domicile hasn't been correctly alleged or something of that nature. However, the text of 1653 I think is broad enough to allow this, and this Court's precedent, especially in the Miller case, in which the Court held that amendments to establish jurisdiction should be broadly allowed in order to effectuate Congress's intent that cases not be dismissed on technicalities allows this type of thing to happen. But it's not a technicality that you didn't raise a claim. This is a new claim that you're bringing. This is not a, oops, we forgot to tell you where she lives. Your Honor, and I wouldn't suggest that it is of the same nature as incorrectly alleging domicile. However, I would with respect answer that we are not alleging an entirely new claim, that in the short-form complaint, we alleged breach of implied warranty, breach of express warranty, breach of warranty of merchantability, and violation of consumer fraud statutes, which was according to the template established by the multi-district litigation. The only thing that wasn't alleged was specifying that that is a Magnuson-Moss claim. And when you look at the Kunz case and you look at the text of the Magnuson-Moss Act, what we have is an identity of legal issues. And what we're really doing is putting... Did anybody else raise this type of federal claim in the MDL? Your Honor, I'm unaware of that. Quite frankly, I have to admit my ignorance on that. All of these cases are thousands of cases, thousands of cases, same basic factual allegations, and no one thought to raise this Magnuson-Moss claim. Doesn't that suggest that maybe it's a stretch? I haven't looked at the cause of action all that much. Your Honor... Is that the only reason you're raising it now, is to just provide a different basis for jurisdiction rather than because you actually want to litigate under it? Your Honor, I don't know whether it's been raised or not. I can't say whether it has or not, so I'm not sure that it's accurate to say that it hasn't been raised by these other thousands of cases. I know that we didn't specifically allege it, and whether it's been alleged by other litigants in the MDL, I can't speak to. However, I think it is appropriate, considering the identity of both the factual and legal issues, to put a name on these warranty claims, which is Magnuson-Moss, and allow the cases to go forward under federal question jurisdiction. And I think that the broad nature of the way that 1653 has been interpreted by this court would allow that to happen. Got a way to limit the precedent we'd be setting if we do this? Your Honor, I think that the remedy under 1653 necessarily needs to be on a case-by-case basis. And I think that this court has the ability, in any opinion that you would issue, granting this relief to say that it is limited to the facts of the case. I think that this court can establish or make a holding limited to the facts of this case, and not set a broad precedent. Do you have a view on the second question from supplemental briefing on whether we could reach the forum non-convenience issue, notwithstanding the lack of jurisdiction? Yes, Your Honor, I do. And I think that, to paraphrase what I believe the holding in Sinochem to be, it is this, that when subject matter jurisdiction is difficult, but forum non-convenience is easy. But is it difficult here? We don't have it unless we permit an amendment of the complaint. So if we don't have it and you've acknowledged that we don't have it, how do we then say, but hey, we can just get rid of this on forum non-convenience grounds, or keep it because that's not a correct way to... I mean, it's one thing to say we can address forum non-convenience without establishing for certain that there is jurisdiction, and Sinochem doesn't, even under the circumstances here, doesn't prevent that. It's quite another to say we know we don't have jurisdiction, but hey, that's okay. We'll just deal with this on forum non-convenience grounds. I mean, I'm struggling to see how we can do that. Your Honor, and if it weren't for the request to amend under 1653, I think I would probably agree with you, but I think that the jurisdictional question needs to be viewed in the light of the 1653 request to amend because I think that that does give a ground for subject matter jurisdiction, and I don't think that that can be ignored in the Sinochem analysis. So you're saying we should establish, we should rule on this, in this case, on the basis of if we had some ham, we could have a ham sandwich if we had some bread, right? Not exactly, Your Honor. Your Honor, what I'm suggesting is that to put a finer point on it, that this court should consider the motion for leave to amend first, and then after that determination has been made, then address the Sinochem and U.S. Motors issue because if this court allows the amendment, then the outcome of the jurisdictional question is affected. So I'm suggesting that these questions be handled in a specific order that I think makes legal and logical sense. And if, to return to your question, Judge Murphy, the court were to allow the amendment, then one of two things could happen. Either the jurisdictional question is difficult, in which case the court, I think, would be within its rights to dismiss on form nonconvenience, or the form nonconvenience analysis is affected because it affects the balance of public and private interests and it may be appropriate to remand to the district court to consider form nonconvenience in that light. So, again, then to specifically address your Sinochem question, when jurisdiction is difficult and form nonconvenience is easy, FNC dismissal is appropriate. But that's not necessarily true when the form nonconvenience ruling was conditioned on waiver of statute of limitations defenses, right? That's the open Sinochem question. You're correct. Sinochem does not specifically address that. I think that that is a very, very common condition that's put on many form nonconvenience dismissals. And I think that it doesn't make the FNC analysis difficult necessarily when you have this conditional dismissal because it goes only to the adequacy of the alternative form. May it please the court. Ben Sasse on behalf of the appellees. I do want to get to the subject matter jurisdiction question. Before I do that, I just want to briefly say that I do, Judge Murphy, believe that we can reach and affirm the form nonconvenience dismissals without having to reach the subject matter jurisdiction question. And I'd be happy to submit papers on the motion for leave to amend that was filed two days ago, but I'm also happy just to address any questions the panel may have now. I think the motion for leave to amend is not well taken, both because of the point Judge Murphy made, which is that that statute exists to allow correction of defective allegations of jurisdiction. It does not allow correction of defective jurisdiction. And so if this court were to... But if we know that jurisdiction, without the amendment, if we know that jurisdiction is defective, that we don't have it, then how does that fit into the framework of deciding form nonconvenience without having to decide jurisdiction first? I mean, it's one thing to say that when you don't know whether you have jurisdiction, but if you know you don't, then how can we put on an order at all? I think what Sinochem says, Your Honor, is that courts have discretion to choose among non-merits grounds for resolving a case. That's when there's an open question on both. I can quote the court as saying, It is, of course, true that once a court determines that jurisdiction is lacking, it can proceed no further and must dismiss the case on that account. In that scenario, form nonconvenience can never apply. That seems to be what we have here, now that we have the concession that diversity jurisdiction does not exist, which I assume you can see, too, that it doesn't exist. That's correct, Your Honor. It doesn't exist. Sinochem was making this point in the context of distinguishing an earlier case, and it seemed to suggest that what it was saying is when there is two difficult questions on both non-merits kind of jurisdictional and form nonconvenience quasi-venue, I guess, you can decide to reach one versus the other, but when you actually have a conclusion that jurisdiction doesn't exist, that sentence would suggest to me that we have no authority to go further and engage in the form nonconvenience analysis. So I think that's a reasonable reading of Sinochem, but let's be clear on the assumptions that I believe are underlying that. One is that the motion for leave to amend is denied, and I believe that's correct, both under the statutory ground, and I would submit that the amendment is substantively futile, but I think you have to play out that string. If we're going to allow or consider a motion for leave to amend to add jurisdiction, and if we think that there's complexity involved in that equation, then I do think you're in the same quandary in terms of complexity that you were in in Sinochem, and I do think you can and should reach the form nonconvenience grounds and affirm. What's your response to the second question, which was the question from Judge Larson, that it seems strange to me to say that a court that does not assure itself of jurisdiction has the ability to reach the merits by saying you can't raise statute of limitations defenses, which are merits-based defenses, they're affirmative defenses, but it seems to me they're still on the merits of the claim. I don't even know, how would that play out, right? If the court issued a form nonconvenience decision telling a party you can't raise a statute of limitations defense, if the party goes and raises the statute of limitations defense, I assume the other party would come back and try to hold the first party in contempt or something, but the court would have no jurisdiction to do anything. It assured itself of jurisdiction, so I don't think it would really have any authority to dabble in the merits just a little bit, which is what the statute of limitations defense would be doing. I understand the concern in your expression. I think the practical response to your question is the way this plays out is you file a motion to reopen the case. If you look at this court's decision in Dowling, that's what the condition was, right? If these events don't occur, you can reopen the case. I would agree with that, but I don't think it would have any jurisdiction. Then the court would have to dismiss for no jurisdiction once it took up and resolved the jurisdictional question. I think the point of Sinokym is it extended the rear gas principle. It doesn't seem fair to the other side that had its venue kicked on the statute of limitations argument when it's really the concession that the statute of limitations won't be raised is not really a concession because it's not judicially enforceable. It's enforceable to the extent that you can reopen the case. The practical response, Your Honor, is that's the way these cases work. It's what this court said in Dowling. There are a lot of other cases that make exactly the same point. I guess also, beyond this broader point, let's identify what the real concern is. I think the real concern is what you expressed with something enforceable by the contempt power. When you look at Sinokym, what it was doing was it was expressing a concern that the Third Circuit had. When you drill down to the Third Circuit opinion, that concern was based on a district court's perceived inability to exact, it was the word it used, a condition. To the extent that's a problem in another case, if this court were to reach this issue here, it could write narrowly because in this case, as in many cases, what happened was we agreed before the district court ruled not to raise these issues. The district court was not exacting a promise. It wasn't forcing us to do something. We said we will not do this in the context of seeking a forum nonconvenience dismissal. This is not a situation where the district court has to exercise power over a defendant to get them to do something that they're not already agreed to. You would have conceded your subject matter, your service of process, your statute of limitations, even if there was no prospect you were going to get a forum nonconvenience ruling out of the district court? No, what we said in the forum nonconvenience motion, Your Honor, was that we would agree to do these things to get a forum nonconvenience dismissal. By granting the conditional ruling on forum nonconvenience, isn't the court essentially contingently asserting jurisdiction? In other words, if you don't do these things, then we will assert jurisdiction, but that has to assume that there's jurisdiction. If we won't do these things, we will reopen the case. I think in the Roergast context, it says you can do it in any order, right? You can reopen the case and then take up subject matter jurisdiction if subject matter jurisdiction is going to be a dicey issue. I think that's the submission there. I do want to get back, if I may, to the subject matter jurisdiction question here and make a few additional points. One is, I don't think it's an answer, Judge Batchelder, to simply send it back for the district court to evaluate the request for leave to amend. We have a final judgment here. There were filings in the district court. Those filings do not raise Rule 60B. I do not believe you can file a Rule 15 motion for leave to amend a case that has a final judgment in it, so I don't think that's the proper course. If you were going to proceed under Rule 60B, I assume you'd have to show excusable neglect. I don't think you can show excusable neglect based on an ignorance of the law, which I think is what happened here. They weren't aware of the basis for subject matter jurisdiction. Let's assume you can get by all of those hurdles. What they're asking to bring here is a Magnuson-Moss Act claim. The Magnuson-Moss Act claim is a non-starter because of the extraterritoriality principle established by the United States Supreme Court and followed in cases like Morrison v. National Australia Bank, and what that case says is you can't allow a statute extraterritorial application unless it expressly says it will so apply. There is absolutely nothing in the Magnuson-Moss Act, Your Honor, that would allow it to reach a product sold and distributed in Spain. Do you have an answer to the question I asked counsel on the other side about whether anybody else has raised this type of claim? I'm not aware of it, Judge Murphy. I don't believe it's been raised in any other case. These cases are resolved on strict product liability and negligence theories below primarily. The claim has to do with the fit of the ball, the femoral ball, into the acetabular cup, and it's not primarily a warranty claim. It's a strict liability claim. It's a negligence claim. It revolves around what doctors knew, and so one of the grounds, and I understand now I'm slipping into the forum nonconvenience argument, but one of the reasons why these cases belong in Spain is the inquiry of what Spanish doctors knew, what they received in terms of marketing materials. None of that discovery has been done in the MDL because the MDL is focused on the devices distributed in the United States, and all of that information is in Spain. Why didn't you just move to dismiss this case three years ago like you apparently did with another case? Why not just clear it off the docket much sooner? Sure, and the way the MDL works, Your Honor, the district court is posed with thousands of cases, right? And so it sets up a certain set of procedures and priorities to try to deal with and manage a very complex docket. And what the court will do, as it did here, case management order four, is say we'll allow short-form complaints and we'll stay all motion practice on those complaints. Now, it will allow occasional filings, right? But what the district court is doing is something similar to what this court does when it decides when it's going to publish an opinion. It's looking for a case where it can issue a ruling that could potentially have broad applicability so that parties, plaintiff's counsel leadership and defense counsel leadership, will understand the court's position on a particular issue. Here, that particular issue happened to be formed on convenience. And if you look at the docket, we asked for leave to amend to file that motion in 2011 when there was about 2,800 cases pending. Well, fast forward to when these cases were filed in 2012. That was in the middle of a huge ramp-up in the MDL. The 2011 status conference alluded to 15 to 20 cases being filed a day. As we know from the district court's opinion, by November 2013, there were over 8,500 cases involving over 12,000 plaintiffs. During that time, if you look at the January 2012 status conference, there was about, I think, 18 million documents produced. We know from the district court's order, 77 million documents were ultimately produced. So there were 60 million documents being produced over that period of time. Also, there were cases being identified by plaintiff's leadership and defense counsel to be worked up for trials. And we know there were two trials held. And remember, this is a coordinated proceeding, not just with the MDL, but with four separate states. There was a trial held in California, and there was a trial held in Illinois. And so all of that work was going on at the same time. And the district court, we do not believe, would have even allowed us to entertain starting to file seriatim motions on some of these procedural issues while we were dealing with all this stuff. Recall, the settlement occurred, and the district court commended the parties for their efficiency in bringing the litigation to as much of a resolution as it could reach, right, with the ability of individual plaintiffs to opt in and opt out for those plaintiffs whose hips were revised within the United States. And so that's the reason why it wasn't filed sooner. It was filed, frankly, when things had proceeded to a point in the MDL and with the opt-in and the opt-outs where the parties could reach back and start dealing with some of these docket cleanup issues that had been standing out there. And in fairness, we did send a letter advising them that we believe their claim should proceed in Spain. There just wasn't an opportunity at that time with everything that was going on in the MDL to take up these issues, because if you take up these issues, you've got to deal with other procedural issues, and so on and so forth. And eventually the MDL bogs down, and we don't get the efficiency and the resolution that we were able to achieve in this case. So the other side mentions some amount of discovery. Is it your position that that discovery was just the standard form complaint submissions that would happen in every case about the background of the particular plaintiff? That's right, Your Honor. It's self-executing. There was a case management order that established that once you've filed a short-form complaint, if you were a patient who had experienced a revision, that is a second surgery to remove it, you had to complete a plaintiff fact sheet and submit other information, and that's all that happened here. And in fact, some of the plaintiffs who submitted plaintiff fact sheets didn't actually have a revision, and so that was a voluntary submission on their part, and that's fine under the case management order, but it wasn't even compelled. In any event, it was nothing we did to try to go out and seek that information before we filed a forum nonconvenience motion. It was simply done by virtue of the fact that they filed in the MDL and triggered those obligations on themselves. And so on the merits, I do think the Court should affirm. I think the Court can reach it without reaching subject matter jurisdiction, and I would urge the Court to uphold the forum nonconvenience dismissals. These cases have been pending a while. I think if we go back and we have to do forum nonconvenience all over again, it's going to be a waste of judicial resources. We'll end up in the same place. These cases belong in Spain under Dowling. They belong in Spain under Hefferon. Both of those cases establish that when an injury occurs in a foreign country based on a product sold, used, and regulated in a foreign country, it is that country that has a strong, and in Hefferon's word, probably insurmountable interest in the claim. That's certainly the case here. We have agreed to submit to the jurisdiction of Spanish courts. There are no known issues with Spanish courts. This Court has, on multiple occasions, approved sending cases to Spain. There are other courts... Is it even clear that your waiver of the statute of limitations defense would be acceptable in Spain? I have a very smart law clerk who tells me that perhaps in Spain your waiver would be ineffective because it would just be a blanket dismissal. There's no affidavit on that point, Your Honor. What we have is we have our waiver and we have a history of cases from this court and other courts that condition dismissal based on a waiver of the statute of limitations. I don't read their affidavit from the other side as saying a waiver is ineffective. I think that's where we are. I would urge not to impose too many more additional hurdles when it comes to issues like these. We submitted an affidavit showing subject matter jurisdiction in Spanish courts and showing that we were amenable to service a process. That's really what Piper Aircraft requires. I think the more additional hurdles you impose, the more difficult it becomes to try to track down all these issues in a foreign forum, which really was what Piper Aircraft was getting at when it was trying to say every case needs to be decided on its facts without a series of rigid rules. Thank you, Your Honor. If I may, I want to begin essentially where counsel left off and use as my jumping off point the statute of limitations question which is really what is driving almost the entirety of the inquiry in the case. The fact of the matter is that the statute of limitations is run in Spain and so where does that leave us? It leaves us with a dismissal on foreign nonconvenience grounds which is conditional upon the waiver of the statute of limitations and so we reach then SINOCHEM and all of the issues surrounding subject matter jurisdiction viewed through that lens. One of the things I want to do at the beginning is go through some of the foreign nonconvenience issues that were raised by my colleague, specifically the waiver and whether it would be effective in Spain and also the delay. The delay in bringing the FNC motion is significantly prejudicial to the plaintiffs, the appellants, for the reasons that the court is already aware and what we just heard from a counsel is what they essentially put in their papers which is we got to it when we got to it and that can't be the legal standard for bringing. It's also suggested that the court might not even have considered it given the structured nature of the MDL so what's your response to that? It considered it in block which was the Israeli case and certainly if they can bring it in 2012 in block and with the plaintiff from Israel they can bring it in 2012 when they are in possession of all the facts for the Spanish plaintiffs and there was nothing that prevented them from doing that. The next thing is the effectiveness or ineffectiveness of the waiver. The fact of the matter is that's their burden. The Associação Brasileira case from this circuit says that they have to be amenable to service in the foreign jurisdiction and that has to be legally meaningful and when you put that in context of the Chang case I believe from the 7th circuit which holds that not only do you have to have a waiver of the statute of limitations it has to be acceptable to the foreign court and if the waiver of statute of limitations in this case is not acceptable to the foreign court then them saying that they are amenable to service in Spain is not legally meaningful under the Associação Brasileira case. And that is the hurdle that they cannot get over because it's their burden to establish that they didn't establish it in their affidavits and I think we just heard a concession to that effect. So the proper way to go through this and that's where I kind of want to spend the remainder of my time. Counsel mentioned that as to the jurisdictional issue you kind of have to play that string out and I couldn't agree with him more. I think that the jurisdictional issue has to be decided first either by this court through the 1653 motion or what we have done in the district court which is file a motion under 61.1 for an indicative statement and what the court can do through a 61.1 motion even though it lacks jurisdiction because this court has it it can indicate how it would rule on essentially a hypothetical Rule 15 motion and that can be litigated in the court below and we can play this jurisdictional question out so this court can be satisfied as to subject matter jurisdiction before we go into the FNC motion. I would acknowledge that another avenue that this court could pursue under Sinocam is to reach the form of non-convenience issue in light of what is a muddy subject matter jurisdiction issue. In the minute that I have left I want to address the question that you raised Judge Murphy about the discovery that was done. One thing that was done in addition to just the pro forma statements of the plaintiffs below was a request for and the production of the plaintiff's medical records, the appellant's medical records and that's important because that's one of the things that they raise in their private interest argument as to balance is that, well wait, we'd have to go to Spain and get all these medical records, those have been produced so it's not like there's been no case specific discovery done in this case. And I see that my time is within 10 seconds of being up so I'll conclude. Thank you. Thank you both for your helpful arguments on some tricky questions. The case is submitted and you may call the next one.